UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COLBY ISTRE | CIVIL ACTION |
| VERSUS | NO. 12-2054 |
| MONTCO OFFSHORE, INC., ET AL | SECTION "H" (3) |

**ORDER AND REASONS**

Before the Court is Third Party Defendant, Schneider Electric, SA's, Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 51). For the following reasons, the Motion is GRANTED and Schneider Electric, SA is DISMISSED WITHOUT PREJUDICE.

**BACKGROUND**

Plaintiff, Colby Istre, filed this action asserting claims under the Jones Act and the general maritime law. Plaintiff was allegedly injured during the course and scope of his employment with

Defendant, Montco, while serving as a seaman aboard the vessel M/V LB PAUL. On the date of the alleged accident, Plaintiff and several other crew members left the vessel in a small rescue boat. When they returned to the vessel, the crew of the LB PAUL attempted to hoist the rescue boat up to the main deck of the vessel. During the hoist, the line on the winch system snapped, causing the boat and Plaintiff to fall back to the water. The boat allegedly fell on top of Plaintiff, causing serious injury.

Montco answered Plaintiff's complaint and filed a third-party complaint against Schat-Harding. Montco alleges that it contracted with Schat-Harding for the installation of the winch system which allegedly failed. Plaintiff then amended his complaint to assert a products liability claim directly against Schat-Harding. In response, Schat-Harding filed a third-party complaint against Schneider Electric, SA ("SESA"). Schat-Harding alleges that the winch system failed because of a defective switch. Schat-Harding claims that the "Telemecanique" brand switch was manufactured by SESA, a French corporation. SESA filed the instant Motion to Dismiss, arguing that this Court lacks personal jurisdiction over it. The Court heard oral argument on the Motion on September 25, 2013. At that time, the Court deferred ruling on the Motion and ordered the parties to conduct limited jurisdictional discovery. Upon completion of jurisdictional discovery, the partes submitted additional briefing, and the Court heard additional oral argument.

**LEGAL STANDARD**

2

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction. *Guidry v. U.S. Tobacco, Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[] for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir. 1983). "In determining whether personal jurisdiction exists, the trial court is not restricted to a review of the plaintiff's pleadings." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996). The Court may consider matters outside the complaint, including affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery. *Id.* (citing *Colwell Realty Invs. v. Triple T. Inns of Ariz.*, 785 F.2d 1330 (5th Cir. 1986)).

Jurisdiction over a non-resident defendant is proper when (1) the defendant is amenable to service of process under the long-arm statute of the forum state, and (2) the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990). In the instant case, "these two inquiries

3

merge into one because Louisiana's long-arm statute permits service of process coterminous with the scope of the due process clause." *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 786 (5th Cir. 1990); *see also* La. Rev. Stat. § 13:3201.

"The Due Process Clause of the Fourteenth Amendment protects a corporation, as it does an individual, against being made subject to the binding judgments of a forum with which it has established no meaningful 'contacts, ties, or relations.'" *Pervasive Software Inc. v. Lexware GMBH & Co. KG*, 688 F.2d 214, 220 (5th Cir. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). A court may exercise personal jurisdiction over a non-resident defendant when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe*, 326 U.S. at 316).

"Minimum contacts" can be established through specific jurisdiction or general jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific personal jurisdiction exists when a defendant has purposely directed its activities, or availed itself of the privileges of conducting its activities, toward the forum state and the controversy arises out of or is related to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 262, 472 (1985). General personal jurisdiction exists when the defendant has engaged in continuous and systematic activities in the forum state, regardless of whether such activity is related to the plaintiff's cause of action.

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415 (1984).

"If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, we must then consider whether the 'fairness' prong of the jurisdictional inquiry is satisfied." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)). The fairness inquiry is determined by analyzing several factors: (1) the burden upon the nonresident defendant of litigating in the forum state; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Bullion v. Gillespie*, 895 F.2d 213, 216 n.5 (5th Cir. 1990) (internal citations omitted).

**LAW AND ANALYSIS**

During the first oral argument, Schat-Harding conceded that the exercise of general *in-personam* jurisdiction was not justified in this case. After a review of the record and the controlling law, the Court agrees. Thus, the only issue before the Court is whether SESA has sufficient minimum contacts with Louisiana such that the exercise of specific personal jurisdiction is warranted.

In order for the Court to exercise specific personal jurisdiction over SESA, Schat-Harding must prove that (1) SESA has purposefully directed contacts with Louisiana; (2) Schat-Harding's

claim against SESA arises out of those contacts; and, (3) the exercise of jurisdiction is fair and reasonable. *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). In an effort to meet its burden, Schat-Harding relies on the "stream of commerce" theory of personal jurisdiction.[1] The Fifth Circuit has held that, in order to exercise jurisdiction under this theory, the proponent of jurisdiction must prove that the defendant placed a product into the stream of commerce with the expectation that the product would be purchased by consumers in the forum state. *Id*. Furthermore, Schat-Harding must prove that the product actually arrived in Louisiana while it was still in the stream of commerce. *Id*. The Court concludes that Schat-Harding has not proved that SESA placed the product at issue into the stream of commerce or that the product reached the forum state while it was in the stream of commerce. Therefore, the Court lacks personal jurisdiction over SESA.

**A. Facts**

Schat-Harding alleges that a defective "Telemecanique" brand limit switch caused the failure of the winch system. Telemecanique is one brand in a portfolio of brands ultimately owned by the Schneider Electric group of companies. Defendant SESA is the ultimate parent of the Schneider Electric group. SESA does not actually manufacture or distribute products. The switch at issue in this litigation was manufactured by PT Schneider Electric Manufacturing Bataam, a

---

[1] The "stream of commerce" theory of personal jurisdiction is the appropriate inquiry in cases, such as this one, which involve "a product sold or manufactured by a foreign defendant." *Ainsworth*, 716 F.3d at 177.

company located in the Philippines. The switch was then shipped to an international distribution center in Evreux, France owned by Schneider Electric France SAS. From Evreaux, the switch traveled to a regional distribution center in Hungary owned by a Schneider subsidiary. The next several steps in the switch's path of travel are unclear. However, the switch was eventually sold to Schat-Harding in the Czech Republic by a Czech corporation, which presumably purchased the switch from a Hungarian Schneider subsidiary. Schat-Harding incorporated the switch into the winch system in the Czech Republic and shipped it to Bayou LaBatre, Alabama. The winch system was finally installed on the M/V LB PAUL in Alabama in January of 2009. After the installation was finished, Montco placed the LB PAUL back into service. The accident involving Plaintiff occurred in Louisiana in October of 2010, approximately 21 months after the winch system was installed.

**B. SESA did not place the switch into the stream of commerce**

The Court cannot exercise personal jurisdiction over SESA under a "stream of commerce" theory unless SESA actually placed the switch at issue into the stream of commerce. *Id*. However, the record is devoid of evidence that SESA manufactures any product, much less the switch at issue. Rather, the evidence shows that SESA is the ultimate parent of a group of companies, one of which actually manufactured the switch at issue.[2] In an effort to show that SESA is a manufacturer, Schat-Harding relies on a verified complaint which SESA filed in a trademark dispute

---

[2] Schat-Harding has not argued that SESA is an alter-ego of PT Schneider Electric Manufacturing Bataam (the actual manufacturer of the switch) nor has it presented any evidence which would allow the Court to reach such a conclusion.

7

in the Northern District of Illinois.[3] In the complaint, SESA alleged that it owns several trademarks upon which the defendant in the trademark suit had allegedly infringed. SESA further alleged that "Schneider Electric is . . . a world leader in the manufacture and distribution of" various electrical products. Schat-Harding claims that this verified complaint establishes that SESA is, contrary to its assertions, a manufacturer of products. The Court disagrees. SESA does not allege in the complaint that it actually manufactures products. Instead, it alleges that Schneider Electric, i.e., the entire group of companies, is a world leader in the manufacture and distribution of electric products. However, even if this Court were inclined to consider the allegations of the verified complaint in the context of this case, it would be of no benefit to Schat-Harding. Even assuming *arguendo* that SESA does manufacture products, Schat-Harding has offered no evidence that SESA manufactured the switch at issue in this litigation.[4] Therefore, the Court cannot exercise personal jurisdiction over SESA.

**C. Stream of Commerce**

Even if Schat-Harding could prove that SESA placed the switch into the stream of commerce, Schat-Harding has failed to prove that the switch arrived in Louisiana while it was still in the stream of commerce. SESA argues that the switch left the stream of commerce when it was

---

[3] This argument overlooks the fact that the complaint was not verified by any representative of SESA. Rather, it was only verified by a representative of Square-D, an American company.

[4] Based on the evidence before the Court, it would be impossible for Schat-Harding to meet this burden because the record clearly reveals that SESA did not manufacture the switch.

purchased by Schat-Harding in the Czech Republic. While, Schat-Harding and Montco argue that the switch left the stream of commerce when the winch system, fully incorporated into the LB PAUL, was "delivered to Montco" in Louisiana.

In order to exercise specific personal jurisdiction over a defendant under a stream of commerce theory, the product at issue must have reached the forum state while still in the stream of commerce. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 273 (5th Cir. 2006) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)). This is because, for the purpose of specific jurisdiction, it is necessary that the cause of action against the defendant arise out of its contacts with the forum state. *Ainsworth*, 716 F.3d at 177. Usually, the question of where the stream of commerce ends is an easy one. The stream of commerce generally ends where the product is purchased by the end consumer. *Seiferth*, 472 F.3d at 273. However, in the instant case, the parties dispute which company was the consumer vis-à-vis the switch at issue. SESA claims Schat-Harding was the consumer because Schat-Harding purchased the switch from SESA, via a distributor in the Czech Republic. On the other hand, Schat-Harding claims Montco was the consumer because the switch was ultimately destined for installation aboard the LB PAUL, albeit as a component part of a larger system. Schat-Harding also claims that, because Montco was located in Louisiana, the winch system was necessarily delivered in Louisiana.

In order for this Court to determine precisely when the switch left the stream of commerce it would need to resolve a difficult question of law which the Supreme Court itself has struggled

9

to answer.[5]  However, it is not necessary for the Court to resolve this issue today because, under any interpretation of the stream of commerce theory, the switch left the stream of commerce before it arrived in Louisiana.

The landmark Supreme Court case on the stream of commerce theory is *World-Wide Volkswagen Corp. v. Woodson*.  In *World-Wide Volkswagen*, plaintiffs purchased an automobile in New York.  444 U.S. at 288.  Several months after purchasing the car, plaintiffs decided to move to Arizona.  *Id*.  As plaintiffs were passing through Oklahoma, the car caught fire, causing serious injuries.  *Id*.  Plaintiffs attempted to sue several entities in Oklahoma, including the New York based dealer and the New York/New Jersey based distributor of the car.  *Id*.  The Supreme Court held that a court in Oklahoma could not constitutionally exercise jurisdiction over the dealer or the distributor under a stream of commerce theory.  *Id*. at 299.  Specifically, the Court held that a consumer's unilateral post-sale act of transporting a final product to the forum state is not sufficient to justify the exercise of personal jurisdiction.  *Id*. at 298.

Applying *World-Wide Volkswagen* to the facts of this case, it is clear that the switch left the stream of commerce, at the latest, in Alabama.  Montco received the winch system when it was finally incorporated to the LB PAUL in Alabama.  The LB PAUL's presence in Louisiana, some 21 months after the winch system was installed, was solely due to the actions of Montco.  Therefore,

---

[5] *See Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102 (1987).

under *World-Wide Volkswagen*, Montco's unilateral post-sale act of transporting the LB PAUL to Louisiana is insufficient to justify the exercise of personal jurisdiction.

Schat-Harding presents two arguments in support of its assertion that stream of commerce extended to Louisiana. First, it argues that the winch system traveled through the port of New Orleans en-route to Alabama. Second, it argues that, since the final user (Montco) negotiated from its office in Louisiana with Schat-Harding's office in Louisiana for the purchase of the winch system, the switch was necessarily "sold" in Louisiana. Neither argument is persuasive.

As to the first, Schat-Harding has not cited to a single court which has relied on the shipping chain of a product in order to justify the exercise of personal jurisdiction over a corporation, nor has the Court found such a case.[6] The second argument is similarly unavailing. The personal jurisdiction analysis is focused on the defendant's contacts with the forum state. SESA was not a party to the negotiations between Schat-Harding and Montco, therefore the negotiations cannot possibly represent a contact upon which this Court can rely to support the exercise of personal jurisdiction over SESA. Thus, the Court concludes that the switch left the stream of commerce prior to its arrival in Louisiana. Because the switch was outside the stream of commerce when it arrived in Louisiana, this Court cannot constitutionally exercise personal jurisdiction over its manufacturer.

---

[6] Furthermore, the Court rejects the logic of such an argument. Under the logic of this argument, if a manufacturer ships a product from Vermont to Florida, but the UPS truck stops in North Carolina, a court in North Carolina would have personal jurisdiction over the manufacturer. Such a result is not consistent with the Fourteenth Amendment.

**CONCLUSION**

For the foregoing reasons, Schneider Electric, SA's, Motion to Dismiss for Lack of Personal Jurisdiction is GRANTED and Schneider Electric, SA is DISMISSED WITHOUT PREJUDICE from this litigation.

New Orleans, Louisiana, this 26th day of February, 2014.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**